# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana



FILED

Aug 22 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JORGE HENRIQUEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-CR-6 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc Rothenberg, Judge
Cause No. 49F09-1006-FD-051001

**August 22, 2012**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

Jorge Henriquez appeals his conviction of resisting law enforcement, a Class D felony. Ind. Code § 35-44-3-3 (2006). We affirm.

## ISSUE

Henriquez presents one issue for our review, which we restate as: whether Henriquez's constitutional right to a fair and impartial jury was violated by the alleged improper influence of an alternate juror.

## FACTS AND PROCEDURAL HISTORY

In June 2010, Henriquez was charged with resisting law enforcement and failure to stop after an accident with an unattended vehicle. A jury trial was held in November 2011 only as to the charge of resisting law enforcement. At some point during jury deliberations, the bailiff informed the court that she heard someone in the jury room say something to the effect of "you need to be able to live with your decision." Tr. p. 220. The bailiff indicated that she believed the voice was that of the alternate juror. The judge and counsel discussed the appropriate way to deal with the situation, and the alternate juror was called into the courtroom. The judge instructed the alternate juror that he was not to take part in the deliberations or influence the jury in any way. The alternate juror indicated that he understood that he was not to communicate with the jury, and he was sent back to the jury room.

Following deliberations, the jury returned a verdict of guilty. Henriquez was sentenced to 365 days with 357 days suspended, and he was placed on probation for sixty days. It is from this conviction that he now appeals.

<u>DISCUSSION AND DECISION</u>

Henriquez contends that his constitutional right to a fair and impartial jury was violated by the failure of the trial court to "adequately ascertain if the alternate [juror] had engaged in deliberations." Appellant's Br. p. 10.

The State observes, and Henriquez concedes, that he did not object to this alleged error at trial. Thus, Henriquez's failure to object results in waiver of the issue on appeal. *See Beeler v. State*, 959 N.E.2d 828, 830 (Ind. Ct. App. 2011) (stating that issue is waived for appeal if not objected to at trial), *trans. denied*. Seeking to avoid procedural default, Henriquez claims that the trial court's handling of the situation with the alternate juror constitutes fundamental error.

The mere fact that error occurred and that it was prejudicial does not satisfy the fundamental error rule; rather, the doctrine of fundamental error is only available in egregious circumstances. *Dickerson v. State*, 957 N.E.2d 1055, 1057 (Ind. Ct. App. 2011), *trans. denied.* Likewise, it is not enough, in order to invoke this doctrine, to urge that a constitutional right is involved. *Id.* To show fundamental error, a defendant must demonstrate error that caused actual and substantial disadvantage, infecting and tainting the entire proceeding. *Id.* In other words, the error must so prejudice the rights of the defendant as to make a fair trial impossible. *Id.*

3

"A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant." *Griffin v. State*, 754 N.E.2d 899, 901 (Ind. 2001), *clarified on reh'g*, 763 N.E.2d 450 (2002). This Court reviews the trial court's determination on this issue for an abuse of discretion, with the appellant having the burden of showing that the misconduct meets the prerequisites for a new trial. *Id.*

Henriquez cites *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (1973), in support of his argument. In *Lindsey*, the local newspaper published an article during Lindsey's burglary trial alleging a rape in connection with the burglary, although Lindsey was not charged with rape; reporting a prior commitment of Lindsey for an attack of another woman several years earlier, although this information was not in evidence; and reporting identification of Lindsey from police mug files by the prosecuting witness, although the witness had testified that she could not identify Lindsey from police photographs. Lindsey filed a motion for mistrial, which was denied by the trial court. The trial proceeded to a verdict of guilty, after which the court conducted an examination of the jury regarding the newspaper article. From this examination it was disclosed that some of the jurors had had no exposure to the article but that several had had exposure that varied from mere awareness of the publication to knowledge from having read a portion of it. In addition, there were two jurors who had read the entire article. Only these two jurors were questioned regarding whether their exposure had influenced their decision.

4

They stated that they were not influenced by the article, and the verdict was permitted to stand.

On appeal, our Supreme Court held that the failure of the trial court to take remedial action at the proper time violated Lindsey's constitutional right to a fair trial. *Id.* at 822. The Court stated that upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice based upon both the content of the publication and the likelihood of a juror having been exposed to it. *Id.* at 824. If the risk of prejudice appears substantial, the court should interrogate the jury as a whole to determine who has been exposed. *Id.* The Court further instructed that if there has been no exposure, the trial court should then instruct upon the hazards of exposure and the necessity of avoiding exposure to extrajudicial information concerning the case. *Id.* If any of the jurors have been exposed, they must be individually interrogated by the court outside the presence of the other jurors to determine the degree and effect of the exposure; each such juror should then be individually admonished. *Id.* After all exposed jurors have been individually interrogated and admonished, the jury should be assembled and collectively admonished. *Id.* Finally, the Court directed that if the defendant deems such action insufficient to remove the peril, he should move for a mistrial. *Id.*

Here, Henriquez asserts that, pursuant to the dictates of *Lindsey*, the alleged conduct of the alternate juror imposed upon the trial court a duty to determine if the alternate juror had engaged in deliberations by interrogating the alternate and the regular

5

jury members. While we acknowledge the *Lindsey* Court's instruction that the trial court should make a determination as to the likelihood of resulting prejudice when there has been a suggestion of improper jury influence, *see id.* at 824, we are also mindful of the remainder of the Court's instruction. That is, the trial court is obligated to interrogate the jury only if the risk of prejudice appears substantial, not merely imaginary or remote. *Id.*

In *Agnew v. State*, 677 N.E.2d 582 (Ind. Ct. App. 1997), *trans. denied*, a panel of this Court acknowledged the procedure set forth in *Lindsey* but noted that if the trial court, within its discretion, determines that the jury's exposure to prejudicial information does not raise a substantial risk of prejudice, it has no duty to interrogate the jurors or to take further remedial action. *Id.* at 584. The allegedly prejudicial occurrence in *Agnew* took place when, during deliberations, the jury asked to review the testimony of both Agnew and the victim. The jury was brought back into the courtroom to hear the taped testimony. The victim was also present in the courtroom for the replaying of the testimony, and she could be heard sobbing and crying during the replaying of Agnew's testimony. The trial court subsequently denied both Agnew's motion for mistrial and motion to correct error based upon the victim's conduct and stated that it did not find the victim's conduct to be disruptive. *Id.* In affirming the trial court, this Court noted the trial court's determination that the victim's behavior presented no risk of prejudice. *Id.*

We find *Henri v. Curto*, 908 N.E.2d 196 (Ind. 2009), to be instructive as well. In *Henri*, it was claimed that the alternate juror used noises and gestures to communicate with the regular jurors during deliberations and to interrupt deliberations during

6

statements favorable to Henri's case. In addition, during deliberations the alternate juror paced and got on the floor and began exercising, causing other jurors to laugh. Our Supreme Court determined that while the alleged behavior of the alternate was disappointing and immature, it did not rise to the level of gross misconduct that would be injurious to Henri. *Id.* at 204.

The facts here are readily distinguishable from those in *Lindsey* and are more akin to the facts in *Henri*. During deliberations in the instant case, the bailiff reported to the court that she had heard someone in the jury room say, in a "raised voice," something to the effect of "you need to be able to live with your decision." Tr. p. 220. The bailiff further indicated to the court her belief that the voice she heard was that of the alternate juror. Upon receiving this information, the court asked the parties how they wanted to proceed. Defense counsel suggested bringing the jury into the courtroom and reminding them that the alternate is not to deliberate. Defense counsel also commented that "juries tend to monitor themselves pretty well" and that if the alternate is trying to deliberate, the other jurors would stop him or bring it to the court's attention. *Id.* at 221. The court then brought the alternate juror into the courtroom and advised him that he was not to deliberate, take part in the deliberations, influence the jury, or communicate with the jury in any way. Further, at the request of defense counsel, the court admonished the alternate not to speak with the jury about this current communication with the court. The alternate juror indicated he understood and agreed. Defense counsel raised no objection to the trial court's course of action or to the admonishments it gave the alternate juror.

7

From these facts it is clear that the trial court, in its proper discretion, determined that the alternate's alleged conduct posed only a remote risk of prejudice, if any at all. Therefore, no full scale inquiry was warranted. We find no abuse of the trial court's discretion and, thus, find no error, fundamental or otherwise. Moreover, in seeking a new trial based upon juror misconduct, Henriquez has not met his burden of showing that the alleged misconduct was gross and probably injurious to him. *See Griffin*, 754 N.E.2d at 901.

CONCLUSION

Based upon the foregoing, we conclude that it was not error for the trial court to not interrogate the jurors or take other remedial action. Henriquez's claim of fundamental error fails.

Affirmed.

BAKER, J., and BRADFORD, J., concur.