## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 04 2020, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tara L. Cragen
The Nice Law Firm, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul J. Kinnaman, | February 4, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-1035 |
| v. | Appeal from the Johnson Superior Court |
| State of Indiana, | The Honorable Lance D. Hamner, Judge |
| *Appellee-Plaintiff,* | Trial Court Cause No. 41D03-1607-F1-6 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial in Johnson County, Paul Kinnaman was convicted of attempted murder, a Level 1 felony; pointing a firearm and resisting law enforcement, both Level 6 felonies; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and was found to be an habitual offender. The trial court sentenced Kinnaman to forty-seven and one-half years in the Indiana Department of Correction ("DOC") for his crimes, enhanced by fifteen years based on Kinnaman's habitual offender status, for a total sentence of sixty-two and one-half years. Kinnaman appeals, raising two issues for our review, which we restate as: 1) whether the trial court erred in denying his Criminal Rule 4(B) petition for discharge, and 2) whether venue was proper in Johnson County. Concluding the trial court did not err in denying Kinnaman's petition for discharge and venue was proper in Johnson County, we affirm.

# Facts and Procedural History

[2] On June 27, 2016, Officer Adam Bandy of the Greenwood Police Department was conducting a traffic stop when he noticed Kinnaman driving by him without a seatbelt on. Kinnaman pulled into a cul-de-sac behind Officer Bandy and after Officer Bandy completed his traffic stop, he waited for Kinnaman to pull out of the cul-de-sac. Approximately five minutes later, Kinnaman drove off and Officer Bandy followed behind him for a period of time, observing Kinnaman commit several traffic infractions. Officer Bandy then attempted to initiate a traffic stop on Kinnaman on State Road 135 at Michelle Lane in

Johnson County, Indiana. However, Kinnaman fled Officer Bandy and drove through a red light. Moments later, Officer Bandy's pursuit of Kinnaman ended in "a bad crash" on Shelby Street and Stop 11 Road in Marion County, Indiana. Transcript, Volume 2 at 209. When Officer Bandy arrived at the accident, he saw Kinnaman trying to escape through the driver's side window of his car. Officer Bandy used his vehicle to pin the driver's side door of Kinnaman's vehicle to try to prevent him from escaping. Kinnaman then escaped his vehicle through the passenger's side door and began running. While Kinnaman was running away, Officer Bandy observed Kinnaman reach in his waistband and pull out a firearm. Kinnaman then pointed the firearm towards Officer Bandy and pulled the trigger. Although Kinnaman tried to shoot Officer Bandy, the firearm did not fire any bullets because the trigger on Kinnaman's gun was dysfunctional and prevented it from being fired. *See* Tr., Vol. 3 at 100. Officer Bandy fired his service weapon striking Kinnaman in his waistline. Kinnaman was escorted to the hospital thereafter.

[3] On July 1, 2016, the Johnson County Prosecutor's Office charged Kinnaman with attempted murder, a Level 1 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; resisting law enforcement and pointing a firearm,[1] both Level 6 felonies; and alleged Kinnaman was an habitual offender. After the charges were filed, the following occurred:

---

[1] The pointing a firearm charge was added later.

- July 1, 2016 – The trial court issued a warrant for Kinnaman's arrest.

- July 12, 2016 – The arrest warrant was served on Kinnaman.

- July 20, 2016 – A video conference was scheduled for Kinnaman's initial hearing, but it was rescheduled to July 27 due to Kinnaman being housed in Marion County Jail; the trial court issued a transport order for the July 27 hearing.

- July 27, 2016 – The trial court was informed that Kinnaman had to appear for court in Marion County on this date; the initial hearing was reset for August 10.

- August 9, 2016 – The trial court rescheduled the August 10 initial hearing for August 17 because Kinnaman needed to be transported from Marion County Jail; the trial court issued a transport order for the August 17 hearing.

- August 15, 2016 – Kinnaman, *pro se*, filed a motion for early trial under Criminal Rule 4(B).

- August 17, 2016 – Kinnaman's initial hearing was held via video conference. Kinnaman pleaded not guilty and the trial court appointed him a public defender. Kinnaman's trial was set for November 15.

- August 31, 2016 – The trial court granted Kinnaman's public defender's motion to withdraw.

- September 2, 2016 – Kinnaman's trial date of November 15 was cancelled.

- September 14, 2016 – Kinnaman, *pro se*, appeared for a pre-trial conference and the trial court appointed him a new attorney. The trial court set his early trial date for October 11, 2016.

- September 26, 2016 – Kinnaman filed a petition for discharge pursuant to Criminal Rule 4(B) and a motion to transfer venue to Marion County.

- September 28, 2016 – The trial court held a hearing on Kinnaman's petition for discharge and motion to transfer venue and denied both motions.

[4]  On September 29, 2016, Kinnaman filed a motion for continuance to prepare for trial and filed seventeen motions for continuance thereafter. A jury trial commenced on March 19, 2019, and the jury found Kinnaman guilty as charged. Kinnaman waived his right to jury for the habitual offender phase of the trial, and the trial court found Kinnaman to be an habitual offender. The trial court sentenced Kinnaman to an aggregate sentence of sixty-two and one-half years to be served in the DOC. Kinnaman now appeals.

# Discussion and Decision

## I. Criminal Rule 4(B)

[5]  Both the Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution protect the right of an accused to a speedy trial. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012). Indiana

Criminal Rule 4 implements this constitutional right.[2] *Id.* When a defendant moves for speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B). *Jenkins v. State*, 809 N.E.2d 361, 366 (Ind. Ct. App. 2004). As relevant to this case, Criminal Rule 4(B) provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days *from the date of such motion*, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Ind. Crim. Rule 4(B)(1) (emphasis added). The overall goal of Criminal Rule 4 "is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin*, 997 N.E.2d at 1037. "It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.* "The determination of whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee largely depends on the specific circumstances of the case." *Wheeler v. State*, 662 N.E.2d 192, 193 (Ind. Ct. App. 1996). When we review Criminal Rule 4 claims, we review questions of law de novo and the trial court's factual

---

[2] As our supreme court has noted, however, reviewing a Criminal Rule 4(B) challenge is "separate and distinct from reviewing claimed violations of those constitutional provisions." *Austin v. State*, 997 N.E.2d 1027, 1037 n.7 (Ind. 2013).

findings for clear error. *Mefford v. State*, 51 N.E.3d 327, 333 (Ind. Ct. App. 2016). "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *Austin*, 997 N.E.2d at 1040 (quotation omitted). In reviewing for clear error, we neither reweigh the evidence nor judge the credibility of the witnesses; instead we consider only the probative evidence and reasonable inferences supporting the judgment. *Id*. Kinnaman contends that the trial court erred in denying his petition for discharge pursuant to Rule 4(B), claiming that he was not brought to trial within the seventy-day time limit.

[6]     It is well established that when a defendant files a petition under Rule 4(B), he is required to maintain a position which is reasonably consistent with his speedy trial request; therefore, he must object at the earliest opportunity to a trial setting that is beyond the seventy-day time period. *Hill v. State*, 777 N.E.2d 795, 797-98 (Ind. Ct. App. 2002) (opinion on reh'g), *cert. denied*, 540 U.S. 832 (2003). If an objection is not timely made, the defendant is deemed to have acquiesced to the trial date. *Hampton v. State*, 754 N.E.2d 1037, 1039 (Ind. Ct. App. 2001), *trans. denied*.

[7]     Kinnaman is not entitled to discharge under Rule 4(B). Kinnaman was arrested on July 12, 2016. On August 15, Kinnaman made his first written demand for a speedy trial by filing a letter with the trial court; therefore, the seventy-day clock would have expired on October 24, 2016. On August 17, Kinnaman had his initial hearing and the trial court, without objection, set Kinnaman's trial date for November 15, 2016. Because Kinnaman did not object when he learned of the November 15 trial date (a date that exceeded the seventy-day time period),

he waived his right to a speedy trial. *See Goudy v. State*, 689 N.E.2d 686, 691 (Ind. 1997) (holding that the defendant waived his right to a speedy trial by failing to object to a pre-trial hearing set beyond the seventy day limit); *see also Sumner v. State*, 453 N.E.2d 203, 206-07 (Ind. 1983) (holding the defendant acquiesced in the delay when he failed to object to the scheduling of a pre-trial conference for a date after the expiration of the seventy-day period).

[8] Waiver notwithstanding, Kinnaman would still not prevail on his claim that the trial court erred in denying his petition for discharge. Kinnaman's initial counsel withdrew on August 31 and Kinnaman's November 15 trial date was cancelled. The trial court then appointed different counsel for Kinnaman at a pre-trial conference on September 14. At that time, the trial court set Kinnaman's early trial date for October 11, which would have been within seventy days of Kinnaman's motion for early trial and thus, would not have implicated Rule 4(B).[3] The State argues, and we agree, that because the October 11 trial date was within the seventy-day period, Kinnaman's petition for discharge on September 26 was premature and thus, it was properly denied. *See Banks v. State*, 402 N.E.2d 1213, 1214 (Ind. 1980) (holding the defendant's motion for discharge was properly denied because the defendant's motion was

---

[3] The record is unclear as to whether Kinnaman's new counsel moved for early trial again or whether the trial court reset Kinnaman's trial to October 11 based on his previous motion for early trial. In any event, October 11 would have been within the seventy-day period.

made on the sixty-ninth day following his early trial motion and was thus premature).

[9] Kinnaman argues that the trial court deprived him of his right to have an early trial when the trial court "grossly delayed" conducting an initial hearing and therefore, the delay should retroactively apply for purposes of his petition for discharge.[4] Brief of the Appellant at 25. He contends that if his initial hearing had been prompt, he would have been advised of his right to an early trial.[5] We reject his contention for two reasons: First, Kinnaman cites to no authority that would suggest that a Rule 4(B) discharge is the proper remedy for a violation of his right to a prompt initial hearing or that the delay in time should be retroactively applied. Moreover, we do not ignore the fact that Kinnaman's initial hearing was unreasonably delayed. But Kinnaman must also show that he was prejudiced by the delay, which he has not done. *See Anthony v. State*, 540 N.E.2d 602, 605 (Ind. 1989) (finding no reversible error in the delay of the defendant's initial hearing when he failed to prove he was prejudiced by the delay). Second, Kinnaman claims that but for the trial court's delay in

---

[4] Indiana Code section 35-33-7-4 provides, "A person arrested in accordance with the provisions of a warrant shall be taken promptly for an initial hearing before the court issuing the warrant or before a judicial officer having jurisdiction over the defendant. If the arrested person has been released in accordance with the provisions for release stated on the warrant, the initial hearing shall occur at any time within twenty (20) days after his arrest." Kinnaman was arrested on July 12 and his initial hearing did not occur until August 17 – a date that was beyond twenty days.

[5] Indiana Code section 35-33-7-5 provides in relevant part: "At the initial hearing of a person, the judicial officer shall inform the person orally or in writing:

* * *

(3) that the person has a right to a speedy trial[.]"

conducting his initial hearing, he would have been advised of his right to a speedy trial. But the record shows that Kinnaman, *pro se*, requested an early trial *before* his initial hearing. Therefore, he clearly knew of his right to an early trial whether he had a prompt initial hearing or not. Accordingly, the trial court did not err in denying Kinnaman's petition for discharge under Rule 4(B).

# II. Venue

Kinnaman also argues that the State failed to prove that venue was proper in Johnson County. He claims that venue should exist in Marion County because the attempted murder and other crimes occurred there.

In Indiana, a defendant has the constitutional and statutory right to be tried in the county where the crime was committed. Ind. Const. art. 1, § 13(a); *see also* Ind. Code § 35-32-2-1(a) ("Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law."). Venue must be proved, but as it is not an element of the offense, the State must only prove venue by a preponderance of the evidence. *Baugh v. State*, 801 N.E.2d 629, 631 (Ind. 2004); *see also Bryant v. State*, 41 N.E.3d 1031, 1037 (Ind. Ct. App. 2015) (stating that the State's burden of proof may be satisfied with circumstantial evidence). We treat a claim of insufficient evidence of venue in the same manner as other claims of insufficient evidence, *Chavez v. State*, 722 N.E.2d 885, 895 (Ind. Ct. App. 2000), and therefore, "[w]e neither reweigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable

inferences therefrom which support the conclusion of requisite venue[,]" *Eberle v. State*, 942 N.E.2d 848, 855 (Ind. Ct. App. 2011), *trans. denied*.

[12] Our supreme court has stated that "where a crime is commenced in one county and the perpetration continues into another county, the venue lies in either county for the prosecution of such a crime." *Stone v. State*, 531 N.E.2d 191, 194 (Ind. 1988) (noting that the defendant was not misled or harmed in any way when his entire case was tried in a county where all the events did not take place); *see also Floyd v. State*, 503 N.E.2d 390, 393 (Ind. 1987) (holding that venue was proper in the county where the crime began or any other county in which the crime continued). Kinnaman does not dispute that he resisted Officer Bandy in Johnson County. Rather, he argues that venue is not proper in Johnson County because all of the elements of the attempted murder and other charges occurred in Marion County, which should be the proper venue. *See* Br. of the Appellant at 24.

[13] We note that "[v]enue is not limited to the place where the defendant acted." *Baugh*, 801 N.E.2d at 631. Instead, "[i]f all charges are integrally related—in other words, if one thing led to another—then the crimes may be considered a single chain of events for purposes of venue." *Abran v. State*, 825 N.E.2d 384, 392 (Ind. Ct. App. 2005), *trans. denied*. Applying this standard to the instant case, the State proved by a preponderance of the evidence that Kinnaman's actions were integrally related and part of a chain of events that began in Johnson County. The evidence in the light most favorable to the trial court's ruling is that Officer Bandy attempted to conduct a traffic stop on Kinnaman

while in Johnson County. Kinnaman fled Officer Bandy while still in Johnson County and continued to flee into Marion County, which resulted in a car accident. At this point, Kinnaman escaped from his vehicle and attempted to shoot Officer Bandy. It is clear that Kinnaman's act of resisting Officer Bandy was "integrally related" to the attempted murder because the attempted murder would not have occurred but for his resisting. Further, the State did not only present evidence that Kinnaman committed the actions, but it presented evidence that they were committed contemporaneously with one another and therefore, Kinnaman's act of resisting was part of a single chain of events that culminated in other charges.

[14] Citing *Neff v. State*, 915 N.E.2d 1026 (Ind. Ct. App. 2009), *trans. denied*, Kinnaman argues that if the State could pick any county it deems appropriate for venue then it could engage in "forum shopping," which would allow the State to obtain a trial in a county it believes to be "harsher" on the defendant. Br. of the Appellant at 22. In *Neff*, the defendant was convicted of child solicitation in Hamilton County. His messages were sent from Madison County to an out-of-state recipient. Although the defendant thought the recipient lived in Hamilton County and arranged to meet "the child" in Hamilton County, his messages were not directed to any person "actually existing in Hamilton County" and he did not "engage in any conduct in furtherance of the crime in Hamilton County" because the crime of child solicitation was complete when he sent the messages. *Id*. at 1034. Accordingly, a panel of this court reversed, noting that Hamilton County was not a proper venue. *Neff* is clearly

distinguishable. Unlike the defendant in *Neff*, Kinnaman actually committed, and acknowledged that he committed, crimes in both counties and therefore, there is no possibility of "forum shopping." As noted above, Kinnaman began resisting Officer Bandy in Johnson County which ultimately ended in Marion County where he committed his other crimes, namely attempted murder, unlawful possession of a firearm, and pointing a firearm. Therefore, the issues of concern in *Neff* do not arise here at all.

[15] Because the State presented evidence that Kinnaman's offenses were integrally related such as to constitute a single chain of events, we conclude that venue was proper in Johnson County. Accordingly, the trial court did not err in denying Kinnaman's motion to transfer venue.

# Conclusion

[16] We conclude that the trial court did not err in denying Kinnaman's Criminal Rule 4(B) petition for discharge and venue was proper in Johnson County. Therefore, we affirm Kinnaman's convictions.

[17] Affirmed.

Bradford, C.J., and Altice, J., concur.